ORIGINAL

JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

        -v.-                       :          INDICTMENT

MICAH MEYERS,                      :          09 Cr. ___
STEPHEN CAPUTO,
DAWN HUGHES,                       :
FNU LNU,
    a/k/a "Eddie Garcia,"          :     **09 CRIM.        523**
JAKOB GEARWAR,
BRIAN URRARO,                      :
MICHAEL DIDIO,
DANIEL HAMPTON,                    :
JENNIFER MOSCHITTA,
VICTOR AVENDANO,                   :
ADRIAN AVENDANO,
JANET MCGUINNESS, and              :
LIAM LEAVEY,

        Defendants.               :

- - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5|21|09

## COUNT ONE

(Conspiracy To Commit Bank And Wire Fraud)

The Grand Jury charges:

### BACKGROUND

1.    At all times relevant to this Indictment,
Bridgewater Funding, LLC ("Bridgewater"), was a mortgage
brokerage firm located in Islip, New York.

2.    At various times relevant to this Indictment,
MICAH MEYERS, FNU LNU, a/k/a "Eddie Garcia," JAKOB GEARWAR, BRIAN
URRARO, and MICHAEL DIDIO, the defendants, were employees of
Bridgewater.

3.   At all times relevant to this Indictment, and through their fraudulent mortgage scheme, MICAH MEYERS, STEPHEN CAPUTO, DAWN HUGHES, FNU LNU, a/k/a "Eddie Garcia," JAKOB GEARWAR, BRIAN URRARO, MICHAEL DIDIO, DANIEL HAMPTON, JENNIFER MOSCHITTA, VICTOR AVENDANO, ADRIAN AVENDANO, JANET MCGUINNESS, and LIAM LEAVEY, the defendants, and others known and unknown, fraudulently brokered, obtained, and assisted others in obtaining certain home mortgage loans, commonly referred to as sub-prime loans, with various banks and lending institutions with branch offices located in New York, New York, among other places (the "lenders").   Through their scheme, the defendants obtained dozens of home mortgage loans under false and fraudulent pretenses, with a total face value of well over $10 million, many of which are now in default and/or foreclosure.

## THE SCHEME TO DEFRAUD

4.   As set forth more fully below, from at least in or about 2005 through in or about 2007, the defendants, and others known and unknown, engaged in an illegal scheme to defraud lenders by preparing and submitting applications and supporting documentation for home mortgage loans with false or misleading information, in order to induce lenders to make loans to persons and at terms that lenders otherwise would not have funded.

5.   As part of the scheme to defraud, the defendants identified properties for sale primarily in and around New York City and Long Island (the "target properties").   In some

2

instances, the defendants identified target properties whose homeowners were facing foreclosure, and fraudulently convinced them that selling their properties to the defendants would be a way to pay off their debts and "save" their homes.  In other instances, the defendants identified target properties that they believed could be resold quickly, or "flipped," so that they would bear minimal risk of loss should the properties' value decline.

6.    As a further part of the scheme to defraud, the defendants typically purchased the target properties with one or more mortgages amounting to 100 percent of the purchase price of the property, thus ensuring that the defendants did not have any money at risk in the fraudulent transactions.  In addition, certain of the defendants sought to obtain mortgages to purchase the target properties without having to create either any actual ownership interest in the properties or any obligation to repay the mortgages.  To that end, certain of the defendants recruited individuals to act as purchasers of the target properties, when, in fact, these purchasers, or "straw buyers," relinquished their control over the target properties to the defendants upon completion of the closing of the mortgage.

7.    In some instances, and as a further part of the scheme, the defendants recruited their friends and family members to be straw buyers.  In other instances, the defendants recruited individuals with minimal real estate experience to act as straw

buyers.   The defendants recruited such straw buyers by, among other things, paying them thousands of dollars in fees and/or by telling them that purchasing the homes would be a good investment opportunity.

8.   As a further part of the scheme to defraud, once a potential straw buyer had been identified and agreed to purchase a property or properties in exchange for a fee, the defendants then submitted loan applications to the lenders on behalf of the straw buyer.   The defendants told several of these straw buyers, in sum and substance and among other things, that they would not have to worry about the mortgage because the defendants would make payments for several months, and thereafter would repurchase and/or sell the properties from the straw buyers.

9.   As a further part of the scheme to defraud, the defendants prepared and submitted loan applications and other documentation to the lenders which purported to accurately represent the personal and financial information of each straw buyer.   However, the defendants fraudulently improved the straw buyers' credit worthiness by falsifying personal and financial information about the straw buyers that was material to the lenders in making their lending decisions.   For example, the defendants prepared and submitted false and misleading information concerning the straw buyers' employment, income, assets, and existing debt, among other things.

10.   As a further part of the scheme to defraud, and in addition to false statements concerning the straw buyers' financial profile, the defendants falsely represented to the lenders that straw buyers intended to reside primarily in the property that would secure each mortgage or loan, when, in fact, the straw buyers typically did not intend to live in the property.

11.   As a further part of the scheme to defraud, the defendants sought and obtained mortgages for the target properties at values that were in excess of the prices paid to the sellers (the "actual sale price") and, thus, the properties' fair market values.   The difference between the amount of the loans and the properties' actual sale price (the "spread") represented, in part, the defendants' profits from the scheme. The defendants involved in each transaction distributed the spread from the fraudulently obtained mortgage loans amongst themselves for their personal gain.

12.   As a further part of the scheme to defraud, once the purchase of the target properties had been funded, the defendants often failed to make mortgage payments as they had promised, causing the straw buyers of certain of the target properties to default on their mortgages.   As a result, mortgage lenders were forced either to foreclose on those properties or to re-purchase the properties from the straw buyers for less than the face amount of the loan.   This often left the original

5

homeowner (who had been promised that selling his or her home would be a way to "save" it) facing eviction. With respect to certain other target properties, the defendants rented them to tenants and used the rent and other monies earned from the scheme to make mortgage payments on behalf of the straw buyers for a certain period of time before allowing the mortgages to go into default. With respect to still other target properties, the defendants made mortgage payments for several months before reselling, or "flipping," the property to yet another straw purchaser, who fraudulently obtained a new mortgage with the defendants' assistance, restarting the fraudulent scheme.

**THE DEFENDANTS**

13.   At various times relevant to this Indictment, MICAH MEYERS, JAKOB GEARWAR, and FNU LNU, a/k/a "Eddie Garcia," the defendants, were loan officers employed by Bridgewater, who supervised and coordinated the recruitment of straw buyers and the submission of fraudulent loan applications and other documents to the lenders.

14.   At various times relevant to this Indictment, BRIAN URRARO, the defendant, was the office manager of Bridgewater, who supervised the loan officers and assisted them in submitting fraudulent loan applications and other documents to the lenders.

15.   At various times relevant to this Indictment, MICHAEL DIDIO, the defendant, was a loan processor at

Bridgewater, who assisted loan officers in submitting fraudulent loan applications and other documents to the lenders.  At other times relevant to this Indictment, DIDIO acted as a straw buyer by signing and submitting fraudulent loan applications and other documents to lenders in order to obtain home mortgage loans for multiple properties within a short period of time.

16.   At various times relevant to this Indictment, DANIEL HAMPTON, the defendant, falsely verified to mortgage lenders the employment information for certain straw buyers.  At other times relevant to this Indictment, HAMPTON recruited individuals to act as straw buyers for the fraudulent scheme.

17.   At various times relevant to this Indictment, STEPHEN CAPUTO and DAWN HUGHES, the defendants, acted as the buyers' attorney, sellers' attorney, and/or settlement attorney for fraudulent transactions.  CAPUTO and HUGHES knowingly assisted in closing fraudulent mortgage loans and making payments that were not disclosed to the lenders, in furtherance of the fraudulent scheme.

18.   At various times relevant to this Indictment, VICTOR AVENDANO, ADRIAN AVENDANO, JENNIFER MOSCHITTA, JANET MCGUINNESS, and LIAM LEAVEY, the defendants, acted as straw buyers by signing and submitting fraudulent loan applications and other documents to lenders in order to obtain home mortgage loans for multiple properties within a short period of time, among other things.

**FRAUD AS TO SELECTED PROPERTIES**

19.     As described above, in furtherance of the
conspiracy and to effect the illegal objects thereof, MICAH
MEYERS, STEPHEN CAPUTO, DAWN HUGHES, FNU LNU, a/k/a "Eddie
Garcia," JAKOB GEARWAR, BRIAN URRARO, MICHAEL DIDIO, DANIEL
HAMPTON, JENNIFER MOSCHITTA, VICTOR AVENDANO, ADRIAN AVENDANO,
JANET MCGUINNESS, and LIAM LEAVEY, the defendants, and others
known and unknown, purchased and flipped numerous properties in
the Southern District of New York and elsewhere.  For example:

a.     In or about October 2005, MICHAEL DIDIO, the
defendant, acting as a straw purchaser, purchased a property
located at 359 Deauville Parkway, Lindenhurst, NY 11757 from
JENNIFER MOSCHITTA, the defendant, for approximately $420,000.
MICAH MEYERS, the defendant, who is married to MOSCHITTA, acted
as the mortgage broker for this transaction, and STEPHEN CAPUTO,
the defendant, acted as the settlement agent representing the
lender.  Documents submitted to the lender, Fremont Investment
and Loan, from this closing contained false representations.
Among other things, the documents falsely represented that DIDIO
intended to live in the property as a primary residence and
falsely overstated DIDIO's income.  Approximately six months
later, DIDIO sold this property to another straw buyer for
approximately $490,000.  The property was subsequently placed in
foreclosure.

8

b.    In or about October 2005, JANET MCGUINESS, the
defendant, acting as a straw purchaser, purchased a property
located at 121 Head of Neck Road, Bellport, NY 11713 from a
homeowner, for approximately $265,000.  MICAH MEYERS, the
defendant, acted as the mortgage broker for this transaction, and
STEPHEN CAPUTO, the defendant, acted as the settlement agent
representing the lender.  Documents submitted to the lender, BNC
Mortgage, Inc., from this closing contained false
representations.  Among other things, the documents falsely
represented that MCGUINESS intended to live in the property as a
primary residence and falsely overstated MCGUINESS's income.
Approximately six months later, MCGUINESS sold this property to
another buyer for approximately $410,000.  The property was
subsequently placed in foreclosure.

c.    In or about November 2005, JENNIFER MOSCHITTA, the
defendant, acting as a straw purchaser, purchased a property
located at 1366 North Clinton Avenue, Bay Shore, NY 11706 from a
homeowner, for approximately $350,000.  FNU LNU, a/k/a "Eddie
Garcia," the defendant, acted as the mortgage broker for this
transaction, and STEPHEN CAPUTO, the defendant, acted as the
settlement agent representing the lender.  Documents submitted to
the lender, Fremont Investment and Loan, from this closing
contained false representations.  Among other things, the
documents falsely represented that MOSCHITTA intended to live in

the property as a primary residence and falsely overstated MOSCHITTA's income.  This property was subsequently placed in foreclosure.

d.    In or about December 2005, JANET MCGUINESS, the defendant, acting as a straw purchaser, purchased a property located at 40 Leroy Place, Copiague, NY 11726 from a homeowner, for approximately $318,000.  MICAH MEYERS, the defendant, acted as the mortgage broker for this transaction, and STEPHEN CAPUTO, the defendant, acted as the settlement agent representing the lender.  Documents submitted to the lender, Fremont Investment and Loan, from this closing contained false representations. Among other things, the documents falsely represented that MCGUINESS intended to live in the property as a primary residence and falsely overstated MCGUINESS's income.

e.    In or about July 2006, a co-conspirator not named as a defendant herein ("CC-1"), acting as a straw purchaser, purchased the property located at 40 Leroy Place, Copiague, NY 11726 from JANET MCGUINESS, the defendant, for approximately $345,000.  DANIEL HAMPTON, the defendant, recruited CC-1 to act as the straw buyer for this transaction.  STEPHEN CAPUTO, the defendant, acted as the settlement agent representing the lender for this transaction, and DAWN HUGHES, the defendant, acted as CC-1's attorney.  Documents submitted to the lender, The CIT Group, from this closing contained false representations.

10

Among other things, the documents falsely represented that CC-1 intended to live in the property as a primary residence and falsely overstated CC-1's income.  This property was subsequently placed in foreclosure.

      f.   In or about January 2006, LIAM LEAVEY, the defendant, acting as a straw purchaser, purchased a property located at 3 Buchanan Avenue, Amityville, NY 11701 from a homeowner, for approximately $443,000.  MICAH MEYERS, the defendant, acted as the mortgage broker for this transaction, and STEPHEN CAPUTO, the defendant, acted as the settlement agent representing the lender.  Documents submitted to the lender, Argent Mortgage Company LLC, from this closing contained false representations.  Among other things, the documents falsely represented that LEAVEY intended to live in the property as a primary residence and falsely overstated LEAVEY's income.  This property was subsequently placed in foreclosure.

      g.   In or about February 2006, LIAM LEAVEY, the defendant, acting as a straw purchaser, purchased a property located at 1055 Morris Avenue, Bronx, NY 10458 from a homeowner, for approximately $490,000.  MICAH MEYERS, the defendant, recruited LEAVEY to act as the straw buyer for this transaction.  Documents submitted to the lender, Option One Mortgage Corp., from this closing contained false representations.  Among other things, the documents falsely represented that LEAVEY intended to

live in the property as a primary residence and falsely
overstated LEAVEY's income.

     h.   In or about February 2006, VICTOR AVENDANO, the
defendant, acting as a straw purchaser, purchased a property
located at 436 Swinton Avenue, Bronx, NY 10464 from a homeowner
for approximately $450,000.  MICAH MEYERS, the defendant,
recruited AVENDANO to act as the straw buyer for this
transaction, STEPHEN CAPUTO, the defendant, acted as the
settlement agent representing the lender, and DAWN HUGHES, the
defendant, acted as AVENDANO's attorney.  Documents submitted to
the lender, Argent Mortgage Company LLC, from this closing
contained false representations.  Among other things, the
documents falsely represented that AVENDANO intended to live in
the property as a primary residence and falsely overstated
AVENDANO's income.  Approximately one year later, AVENDANO sold
this property to another straw buyer for approximately $495,000.

     i.   In or about July 2006, a co-conspirator not
named as a defendant herein ("CC-2"), acting as a straw
purchaser, purchased a property located at 32 Carston Street,
Copiague, NY 11784 from MICHAEL DIDIO and MICAH MEYERS, the
defendants, for approximately $440,000.  MEYERS added his name to
the deed to the property shortly before this sale to CC-2.
STEPHEN CAPUTO, the defendant, acted as DIDIO's and MEYERS's
attorney, and DAWN HUGHES, the defendant, acted as CC-2's

attorney.  Documents submitted to the lender, People's Choice Home Loans, from this closing contained false representations. Among other things, the documents falsely represented that CC-2 intended to live in the property as a primary residence and falsely overstated CC-2's income.  This property was subsequently placed in foreclosure.

> j.   In or about September 2006, a co-conspirator not named as a defendant herein ("CC-3"), acting as a straw purchaser, purchased a property located at 457 Peacan Street, Lindenhurst, NY 11757 from a homeowner for approximately $330,000.  MICHAEL DIDIO, the defendant, acted as the mortgage broker for this transaction, and STEPHEN CAPUTO, the defendant, acted as the settlement agent representing the lender.  Documents submitted to the lender, Wilmington Finance Inc., from this closing contained false representations.  Among other things, the documents falsely represented that CC-3 intended to live in the property as a primary residence and falsely overstated CC-3's income.

> k.   In or about December 2006, a co-conspirator not named as a defendant herein ("CC-4"), acting as a straw purchaser, purchased a property located at 457 Peacan Street, Lindenhurst, NY 11757 from CC-3, for approximately $450,000. MICHAEL DIDIO, the defendant, acted as the mortgage broker for this transaction, and STEPHEN CAPUTO, the defendant, acted as the

settlement agent representing the lender.  Documents submitted to the lender, Greenpoint Mortgage Funding Inc., from this closing contained false representations.  Among other things, the documents falsely represented that CC-4 intended to live in the property as a primary residence and falsely overstated CC-4's income.  This property was subsequently placed in foreclosure.

l.    In or about September 2006, CC-2, acting as a straw purchaser, purchased a property located at 19 Parkwood Avenue, Westbury, NY 11590 from a homeowner for approximately $460,000.  JAKOB GEARWAR, the defendant, acted as the mortgage broker for this transaction.  Documents submitted to the lender, Downs Financial Inc., from this closing contained false representations.  Among other things, the documents falsely represented that CC-2 intended to live in the property as a primary residence and falsely overstated CC-2's income.

m.    In or about March 2007, ADRIAN AVENDANO, the defendant, acting as a straw purchaser, purchased a property located at 9 Kendrick Lane, Dix Hills, NY 11746 from a homeowner for approximately $1,330,000.  JENNIFER MOSCHITTA, the defendant, provided AVENDANO approximately $67,500 for the down payment on this transaction.  STEPHEN CAPUTO, the defendant, acted as the settlement agent representing the lender.  Documents submitted to the lender, American Brokers Conduit, from this closing contained false representations.  Among other things, the documents falsely

represented that AVENDANO intended to live in the property as a primary residence and falsely overstated AVENDANO's income. This property was subsequently placed in foreclosure.

n.   In or about July 2007, VICTOR AVENDANO, the defendant, purchased a property located at 10 Bailey Avenue, Bayshore, NY 11706 from a homeowner, for approximately $380,000. MICAH MEYERS, the defendant, acted as the mortgage broker for this transaction, and STEPHEN CAPUTO, the defendant, acted as the settlement agent representing the lender. Documents submitted to the lender, Bank of America, from this closing contained false representations. Among other things, the documents falsely represented that AVENDANO intended to live in the property as a primary residence and falsely overstated AVENDANO's income. This property was subsequently placed in foreclosure.

## THE CONSPIRACY

20.   From at least in or about 2005 through in or about 2007, in the Southern District of New York and elsewhere, MICAH MEYERS, STEPHEN CAPUTO, DAWN HUGHES, FNU LNU, a/k/a "Eddie Garcia," JAKOB GEARWAR, BRIAN URRARO, MICHAEL DIDIO, DANIEL HAMPTON, JENNIFER MOSCHITTA, VICTOR AVENDANO, ADRIAN AVENDANO, JANET MCGUINNESS, and LIAM LEAVEY, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Sections 1343 and 1344 of Title 18, United States Code.

15

## OBJECTS OF THE CONSPIRACY

### Wire Fraud

21.   It was a part and an object of the conspiracy that
MICAH MEYERS, STEPHEN CAPUTO, DAWN HUGHES, FNU LNU, a/k/a "Eddie
Garcia," JAKOB GEARWAR, BRIAN URRARO, MICHAEL DIDIO, DANIEL
HAMPTON, JENNIFER MOSCHITTA, VICTOR AVENDANO, ADRIAN AVENDANO,
JANET MCGUINNESS, and LIAM LEAVEY, the defendants, and others
known and unknown, unlawfully, willfully, and knowingly, having
devised and intending to devise a scheme and artifice to defraud,
and for obtaining money and property by means of false and
fraudulent pretenses, representations, and promises, would and
did transmit and cause to be transmitted by means of wire and
radio communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of executing
such scheme and artifice, in violation of Title 18, United States
Code, Section 1343.

### Bank Fraud

22.   It was further a part and an object of the
conspiracy that MICAH MEYERS, STEPHEN CAPUTO, DAWN HUGHES, FNU
LNU, a/k/a "Eddie Garcia," JAKOB GEARWAR, BRIAN URRARO, MICHAEL
DIDIO, DANIEL HAMPTON, JENNIFER MOSCHITTA, VICTOR AVENDANO,
ADRIAN AVENDANO, JANET MCGUINNESS, and LIAM LEAVEY, the
defendants, and others known and unknown, unlawfully, willfully,
and knowingly would and did execute and attempt to execute a
scheme and artifice to defraud financial institutions, the

16

deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

### OVERT ACTS

23. In furtherance of the conspiracy and to effect the illegal objects thereof, MICAH MEYERS, STEPHEN CAPUTO, DAWN HUGHES, FNU LNU, a/k/a "Eddie Garcia," JAKOB GEARWAR, BRIAN URRARO, MICHAEL DIDIO, DANIEL HAMPTON, JENNIFER MOSCHITTA, VICTOR AVENDANO, ADRIAN AVENDANO, JANET MCGUINNESS, and LIAM LEAVEY, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. In or about October 2005, MICHAEL DIDIO, the defendant, purchased a property located at 359 Deauville Parkway, Lindenhurst, NY 11757.

b. In or about October 2005, MICAH MEYERS, the defendant, brokered mortgage loans for the purchase of a property located at 359 Deauville Parkway, Lindenhurst, NY 11757.

c. In or about October 2005, JANET MCGUINESS, the defendant, purchased a property located at 121 Head of Neck Road, Bellport, NY 11713.

17

d.    In or about November 2005, JENNIFER MOSCHITTA, the defendant, purchased a property located at 1366 North Clinton Avenue, Bay Shore, NY 11706.

e.    In or about November 2005, FNU LNU, a/k/a "Eddie Garcia," the defendant, brokered mortgage loans for the purchase of a property located at 1366 North Clinton Avenue, Bay Shore, NY 11706.

f.    In or about July 2006, DANIEL HAMPTON, the defendant, recruited an individual to act as a straw buyer for the purchase of 40 Leroy Place, Copiague, NY 11726.

g.    In or about February 2006, LIAM LEAVEY, the defendant, purchased a property located at 1055 Morris Avenue, Bronx, NY 10458.

h.    In or about February 2006, VICTOR AVENDANO, the defendant, purchased a property located at 436 Swinton Avenue, Bronx, NY 10464.

i.    In or about February 2006, BRIAN URRARO, the defendant, arranged for a fraudulent verification of rent in connection with the mortgage application for a property located at 436 Swinton Avenue, Bronx, NY 10464.

j.    In or about February 2006, STEPHEN CAPUTO, the defendant, acted as settlement attorney in connection with the purchase of property located at 436 Swinton Avenue, Bronx, NY 10464.

k.    In or about February 2006, DAWN HUGHES, the

defendant, acted as the buyer's attorney in connection with the purchase of property located at 436 Swinton Avenue, Bronx, NY 10464.

l.    In or about September 2006, JAKOB GEARWAR, the defendant, brokered mortgage loans for the purchase of a property located at 19 Parkwood Avenue, Westbury, NY 11590.

m.    In or about March 2007, ADRIAN AVENDANO, the defendant, purchased a property located at 9 Kendrick Lane, Dix Hills, NY 11746.

(Title 18, United States Code, Section 1349.)

### COUNT TWO

(Bank Fraud re: 359 Deauville Parkway, Lindenhurst, NY 11757)

The Grand Jury further charges:

24.    In or about October 2005, in the Southern District of New York and elsewhere, MICAH MEYERS, MICHAEL DIDIO, and JENNIFER MOSCHITTA, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to

Fremont Investment and Loan, in order to procure home mortgage loans in the amount of approximately $420,000 for the purchase of property at 359 Deauville Parkway, Lindenhurst, NY 11757.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE

(Wire Fraud re: 121 Head of Neck Road, Bellport, NY 11713)

The Grand Jury further charges:

25.   In or about October 2005, in the Southern District of New York and elsewhere, MICAH MEYERS, STEPHEN CAPUTO, and JANET MCGUINNESS, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to BNC Mortgage, Inc., in order to procure home mortgage loans in the amount of approximately $265,000 for the purchase of 121 Head of Neck Road, Bellport, NY 11713, which funds were transferred via interstate wire through a bank account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR

(Bank Fraud re: 1366 North Clinton Avenue, Bay Shore, NY 11706)

The Grand Jury further charges:

26.   In or about November 2005, in the Southern District of New York and elsewhere, FNU LNU, a/k/a "Eddie Garcia" and JENNIFER MOSCHITTA, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to Fremont Investment and Loan, in order to procure home mortgage loans in the amount of approximately $350,000 for the purchase of property at 1366 North Clinton Avenue, Bay Shore, NY 11706.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT FIVE

(Bank Fraud re: 40 Leroy Place, Copiague, NY 11726)

The Grand Jury further charges:

27.   In or about December 2005, in the Southern District of New York and elsewhere, MICAH MEYERS and JANET

MCGUINNESS, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to Fremont Investment and Loan, in order to procure home mortgage loans in the amount of approximately $318,000 for the purchase of property at 40 Leroy Place, Copiague, NY 11726.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT SIX

(Wire Fraud re: 40 Leroy Place, Copiague, NY 11726)

The Grand Jury further charges:

28.  In or about July 2006, in the Southern District of New York and elsewhere, MICAH MEYERS, STEPHEN CAPUTO, and DANIEL HAMPTON, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio

22

communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to The CIT Group, in order to procure home mortgage loans in the amount of approximately $345,000 for the purchase of 40 Leroy Place, Copiague, NY 11726, which funds were transferred via interstate wire through a bank account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT SEVEN

(Wire Fraud re: 3 Buchanan Avenue, Amityville, NY 11701)

The Grand Jury further charges:

29.   In or about January 2006, in the Southern District of New York and elsewhere, MICAH MEYERS and LIAM LEAVEY, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other

things, to Argent Mortgage Company LLC, in order to procure home mortgage loans in the amount of approximately $443,000 for the purchase of 3 Buchanan Avenue, Amityville, NY 11701, which funds were transferred via interstate wire through a bank account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT EIGHT

(Wire Fraud re: 1055 Morris Avenue, Bronx, NY 10458)

The Grand Jury further charges:

30.   In or about February 2006, in the Southern District of New York and elsewhere, MICAH MEYERS and LIAM LEAVEY, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to Option One Mortgage Corp., in order to procure home mortgage loans in the amount of approximately $490,000 for the purchase of 1055 Morris Avenue, Bronx, NY 10458, which funds were transferred via interstate wire through a bank

account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT NINE

(Wire Fraud re: 436 Swinton Avenue, Bronx, NY 10464)

The Grand Jury further charges:

31.  In or about February 2006, in the Southern District of New York and elsewhere, MICAH MEYERS, STEPHEN CAPUTO, DAWN HUGHES, and VICTOR AVENDANO, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to Argent Mortgage Company LLC, in order to procure home mortgage loans in the amount of approximately $450,000 for the purchase of 436 Swinton Avenue, Bronx, NY 10464, which funds were transferred via interstate wire through a bank account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TEN

(Wire Fraud re: 32 Carston Street, Copiague, NY 11784)

The Grand Jury further charges:

32.   In or about July 2006, in the Southern District of New York and elsewhere, MICAH MEYERS and MICHAEL DIDIO, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to People's Choice Home Loans, in order to procure home mortgage loans in the amount of approximately $440,000 for the purchase of 32 Carston Street, Copiague, NY 11784, which funds were transferred via interstate wire through a bank account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT ELEVEN

(Wire Fraud re: 457 Peacan Street, Lindenhurst, NY 11757)

The Grand Jury further charges:

33.   In or about September 2006, in the Southern

26

District of New York and elsewhere, MICHAEL DIDIO, MICAH MEYERS, and STEPHEN CAPUTO, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to Wilmington Finance Inc., in order to procure home mortgage loans in the amount of approximately $330,000 for the purchase of 457 Peacan Street, Lindenhurst, NY 11757, which funds were transferred via interstate wire through a bank account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWELVE

(Wire Fraud re: 457 Peacan Street, Lindenhurst, NY 11757)

The Grand Jury further charges:

34.  In or about December 2006, in the Southern District of New York and elsewhere, MICHAEL DIDIO, MICAH MEYERS, and STEPHEN CAPUTO, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by

means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to Greenpoint Mortgage Funding Inc., in order to procure home mortgage loans in the amount of approximately $450,000 for the purchase of 457 Peacan Street, Lindenhurst, NY 11757, which funds were transferred via interstate wire through a bank account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THIRTEEN

(Wire Fraud re: 19 Parkwood Avenue, Westbury, NY 11590)

The Grand Jury further charges:

35.   In or about September 2006, in the Southern District of New York and elsewhere, JAKOB GEARWAR, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to

wit. GEARWAR submitted and caused to be submitted false residency, employment and financial information, among other things, to Downs Financial Inc., in order to procure home mortgage loans in the amount of approximately $460,000 for the purchase of 19 Parkwood Avenue, Westbury, NY 11590, which funds were transferred via interstate wire through a bank account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOURTEEN

(Wire Fraud re: 9 Kendrick Lane, Dix Hills, NY 11746)

The Grand Jury further charges:

36.   In or about March 2007, in the Southern District of New York and elsewhere, JENNIFER MOSCHITTA and ADRIAN AVENDANO, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to American Brokers Conduit, in order to procure home mortgage loans in the amount of approximately

$1,275,000 for the purchase of 9 Kendrick Lane, Dix Hills, NY 11746, which funds were transferred via interstate wire through a bank account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIFTEEN

(Bank Fraud re: 10 Bailey Avenue, Bayshore, NY 11706)

The Grand Jury further charges:

37.   In or about July 2007, in the Southern District of New York and elsewhere, MICAH MEYERS and VICTOR AVENDANO, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants submitted and caused to be submitted false residency, employment and financial information, among other things, to Bank of America, in order to procure home mortgage loans in the amount of approximately $380,000 for the purchase of property at 10 Bailey Avenue, Bayshore, NY 11706.

(Title 18, United States Code, Sections 1344 and 2.)

30

## FORFEITURE ALLEGATION

38.   As a result of committing one or more of the bank and wire fraud offenses alleged in Counts One through Fifteen of this Indictment, MICAH MEYERS, STEPHEN CAPUTO, DAWN HUGHES, FNU LNU, a/k/a "Eddie Garcia," JAKOB GEARWAR, BRIAN URRARO, MICHAEL DIDIO, DANIEL HAMPTON, JENNIFER MOSCHITTA, VICTOR AVENDANO, ADRIAN AVENDANO, JANET MCGUINNESS, and LIAM LEAVEY, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982, and Title 28, United States Code, Section 2461, any property constituting or derived from proceeds obtained directly or indirectly as a result of the offenses alleged in Counts One through Fifteen of the Indictment, including but not limited to at least $10,000,000 in United States currency, in that such sum in aggregate is property representing the approximate amount of proceeds obtained as a result of the bank and wire fraud offenses, for which the defendants are jointly and severally liable.

## SUBSTITUTE ASSET PROVISION

39.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

     (1)   cannot be located upon the exercise of due diligence;

     (2)   has been transferred or sold to, or deposited with, a third person;

31

(3)    has been placed beyond the jurisdiction of the
        Court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which
        cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18,
United States Code Section 982(b), and Title 28, United States
Code, Section 853(p), to seek forfeiture of any other property of
the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982, 1343, 1344, and
    1349, Title 21, United States Code, Section 853, and Title 28,
                United States Code, Section 2461.)


_____
FOREPERSON

_____
LEV L. DASSIN
Acting United States Attorney

32

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MICAH MEYERS,
STEPHEN CAPUTO,
DAWN HUGHES,
FNU LNU, a/k/a "Eddie Garcia,"
JAKOB GEARWAR,
BRIAN URRARO,
MICHAEL DIDIO,
DANIEL HAMPTON,
JENNIFER MOSCHITTA,
VICTOR AVENDANO,
ADRIAN AVENDANO,
JANET MCGUINNESS, and
LIAM LEAVEY,

Defendants.

## INDICTMENT

(18 U.S.C. §§ 2, 1343, 1344, and 1349.)

LEV L. DASSIN
Acting United States Attorney.



A TRUE BILL

Foreperson.